# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| BERNADINE E. CAMPO | ) | C.A. No. 2023-1021-LM |
| IRREVOCABLE TRUST | ) | |

## MAGISTRATE'S POST-TRIAL FINAL REPORT

Final Report:  October 29, 2024
Date Submitted: June 26, 2024

Jason C. Powell and Thomas J. Reichert, THE POWELL FIRM, LLC, Wilmington, Delaware; *Counsel for Petitioner Candice L. Soule*.

Kevin F. Campo, Philadelphia, PA; *Pro se Respondent*.

**Mitchell, M.**

Towards the end of her life, Bernadine Campo created a Trust to take care of her needs and to assist with the needs of her heirs after her death. The Trust, created in November of 2015, named her two children, Karen Novack and Kevin Campo, as co-trustees. Karen and Kevin were also the beneficiaries of the Trust. When Ms. Campo passed away on January 4, 2016, the Trust directed the remaining Trust assets to be distributed equally between her two children. In the event of the death of one trustee, the Trust authorized the surviving trustee to continue serving as sole trustee. Unfortunately, this clause was triggered with the death of Karen Novack on April 2, 2017, who passed away a little over a year after her mother. Thereafter, Kevin continued as the sole trustee as of the Trust.

In November of 2020, Candice Soule, the only child of Karen Novack, filed an action in this Court asserting that Kevin failed to distribute the Trust assets she is entitled to. That action resulted in a default judgment order where Kevin was removed as the trustee and Candice replaced him as the trustee in accordance with that Order. After serving as trustee for a couple of years, the Petitioner now seeks an approval of the accounting and to distribute the Trust assets to the beneficiaries. This is my Final Report.

## I.    BACKGROUND[1]

The present action stems from the granted Order for Default Judgment (hereinafter the "Default Order") removing Kevin F. Campo (hereinafter, "Respondent") as Executor for the Estate of Bernadine E. Campo (hereinafter, the "Estate") and trustee for the Irrevocable Trust of Bernadine E. Campo (hereinafter, the "Trust"). The Default Order recommended Candice L. Soule (hereinafter, "Petitioner") as successor trustee for the Trust and ordered Respondent to account for and turn over any and all assets of the Estate and the Trust.[2] Respondent failed to fulfill his obligation to provide a full accounting.[3] The present petition at issue seeks the Court's approval of an accounting of Trust assets and requests that the Court enter a judgment against Respondent to be reflected in the final distribution of the Trust to the beneficiaries.[4] I begin with a chronology of the relevant facts

---

[1] The facts in this report reflect my findings based on the record developed at trial on June 26, 2024.  I grant the evidence the weight and credibility I find it deserves. Citations to the transcript will be in the form of "Tr. __." Citations to the Docket for the present matter in the form of "D.I.__" for the Docket Item number. Citations to the Docket for the prior case, *Candice L. Soule v. Kevin F. Campo*, C.A. No. 2020-0980-SEM will be in the form of "C.A. No. 2020-0980-SEM, D.I.__" Citations to the exhibits submitted by the Petitioner are in the form of "PX __"; Citations to the exhibits submitted by the Respondent are in the form of "RX__."

[2] C.A. No. 2020-0980-SEM, D.I. 13.

[3] Tr. 92: 10-12; Tr. 121: 6-20.

[4] D.I. 1.

developed in the record, before turning to the resolution of the issues argued at the trial which was held on June 26, 2024.

### A. The Administration of the Estate and Trust

On October 16, 2014, Decedent executed her Last Will and Testament (hereinafter, the "Will").[5] Pursuant to the Will, Bernadine E. Campo (hereinafter, "Decedent") appointed Respondent, her son, as the initial executor of the Estate.[6] The Will appoints Karen Novack (hereinafter "Ms. Novack"), Decedent's daughter, as successor executrix if Respondent is unable to serve or is removed.[7] The Will also directs for the remaining funds of the estate to be distributed to Respondent and Ms. Novack per stirpes.[8]

On November 4, 2015, Decedent executed a trust agreement appointing Respondent and Ms. Novack to act as trustees.[9] The Trust agreement states that in the event of the death of one trustee, the surviving trustee is authorized to continue serving as sole trustee.[10]

---

[5] PX 2.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] PX 3.

[10] PX 3 section 5.08.

3

The Decedent died on January 4, 2016, leaving Respondent and Ms. Novack as her only surviving heirs.[11] Ms. Novack passed on April 2, 2017, intestate, leaving Petitioner as her only heir.[12]

There are three properties that were held in the Trust, two of which have already been sold, and the other property Petitioner plans to sell as soon as possible.[13] On September 22, 2015, Decedent conveyed 8409 Seaview Avenue, NJ, 08260 (hereinafter, the "Wildwood Property"), to the Trust by deed.[14] On November 4, 2015, Decedent executed a deed to the Trust for the property known as 1260 Faun Road, Wilmington, DE 19803, (hereinafter, the "Wilmington Property").[15] On March 15, 2018, Respondent, acting as both the Administrator of the Estate of Louis DeSilvio, Decedent's father, and as Executor of the Estate, executed a deed conveying a property known as 63 Gordon Avenue, Williamstown, New Jersey (hereinafter, "Williamstown Property") to the Estate of Bernadine E. Campo.[16]

---

[11] Tr. 57: 8-9; D.I. 1 ¶ 3.

[12] Tr. 57: 1-7; D.I. 1 ¶ 8.

[13] PX 12 and PX 35.

[14] PX 6.

[15] PX 5.

[16] PX 4.

### B. The Removal of Kevin Campo as Executor and Trustee

On November 13, 2020, Petitioner sought a removal action to release Respondent from his fiduciary position.[17] Respondent failed to participate, and as a result, on April 30, 2021, the Court entered a default judgment (hereinafter, "Default Order") removing Respondent as Executor and trustee of the Estate and the Trust respectively and appointing Petitioner as successor trustee and Executor.[18] The Default Order provides that Respondent is to fully account for all Estate and Trust assets, income, and expenses over which he has exercised control and orders him to turnover any and all assets of the Estate and Trust to Petitioner within 30 days of the date of the order.[19] The Respondent failed to provide the Petitioner with the ordered accounting of the assets that had formerly been within his control.[20] The Default Order also states that judgment could be entered against Respondent in favor of the Trust for any assets, income, and expenses he is unable to account for or for any damages determined at a future court hearing.[21] The Default Order was adopted by the Court and made final on September 13, 2021.[22]

---

[17] C.A. No. 2020-0980-SEM, D.I. 1.

[18] C.A. No. 2020-0980-SEM, D.I. 13.

[19] *Id.*

[20] Tr. 118: 6-10.

[21] C.A. No. 2020-0980-SEM, D.I. 13.

[22] C.A. No. 2020-0980-SEM, D.I. 38.

### C. Petitioner's Service as Successor Trustee and Executor

After assuming the position as Trustee and Executor, Petitioner first performed an investigation into the status of the property taxes for the Properties. Petitioner discovered the following: (1) the Wildwood Property was $4,833.75 behind in property taxes,[23] (2) the Wilmington Property was $6,044.88 behind in property taxes, and (3) the Williamstown Property's taxes had been paid by a third party in exchange for a lien amounting to $20,364.49.[24] The Williamstown property would have been subject to foreclosure in October of 2022 but for Petitioner's payments to the relevant creditor.[25]

Respondent continued to reside at both the Wilmington and Wildwood properties after being removed as the Trustee and Executor. Petitioner alleges in the petition and in her testimony at trial that she made attempts to access the Wilmington and Wildwood properties after Respondent's removal from his fiduciary role and was met with aggression and hostility.[26] This led to the Petitioner hiring O'Rourke Investigative Associates, a private investigator, to facilitate communication between

---

[23] This factual issue comes before me on a Post Trial decision. Petitioner made this assertion of the Wildwood property being behind on property taxes in this amount within their petition but have failed to provide the court with exhibits or testimony to substantiate this claim. I will give this allegation the weight and credibility I feel as though it deserves.

[24] PX 32; PX 30; Tr. 69: 21-24 – 70: 1-5.

[25] Tr. 70:12-19.

[26] Tr. 97:17-24 – 98: 1-4.

6

Petitioner and Respondent in a civil manner and to oversee the changing of the locks on the two properties in order to begin the process of preparing the two properties for sale.[27] As a result the Trust incurred $3,936.38 for the private investigators services.[28] The investigative report states that on October 6, 2021, the locks were changed and keys were exchanged voluntarily between Respondent and the investigator.[29]

### D.    Rental History of the Williamstown Property

The Decedent used the Williamstown Property as rental income for the Estate.[30] The petition claims that a judgment should be held against Respondent in the amount of $78,000.00 in favor of the Estate for the total rental income received in connection with the property that Respondent has failed to account for between the years of 2012 and 2020.[31] Petitioner also requests judgment to be entered in the amount of $31,200.00 which represents the additional income that should have been received if the Williamstown Property had remained HUD eligible.[32]

---

[27] PX 7; Tr. 63:22-24 – 64:1-7.

[28] PX 7.

[29] *Id.*

[30] PX 31.

[31] D.I. 1 ¶ 83.

[32] D.I. ¶ 83.

John Romolini (hereinafter, the "Tenant") began renting the Williamstown Property from the Decedent in 2012.[33] Tenant informed the private investigator hired by Petitioner that rental payments were initially paid by the Department of Housing and Urban Development (hereinafter, "HUD") due to the Tenant's qualifying disabilities.[34] The rent collected on the property was $1,300.00 per month.[35] The Williamstown property became no longer HUD eligible in June of 2018.[36] Petitioner claims that Respondent failed to maintain the Williamstown Property to the standards necessary for the HUD rental program, while the Respondent claims that Tenant's disability stopped being HUD eligible.[37] After HUD rental payments halted in June of 2018, Respondent allowed Tenant to continue to live on the premises in exchange for the Tenant maintaining the property.[38]

In the Fall of 2022, after Respondent's removal as a fiduciary, Petitioner pursued an ejectment action and had the Tenant removed from the Property.[39] The Petition asserts that the Trust incurred $582.00 in legal fees and expenses to pursue

---

[33] PX 7 at 3, ¶ 2.

[34] PX 7.

[35] Tr. 71: 4-7; PX 7 at 3, ¶ 2.

[36] Tr. 134:10- 24 – 136:4-10; Tr. 111: 13- 15.

[37] Tr. 67:22-24 – 68:1-2; Tr. 111: 9-17.

[38] PX 7; Tr. 67: 12-14.

[39] D.I. 1 ¶ 57; Tr. 67:3-6.

such action.[40] Petitioner received no records or accountings of any of the rental payments received for this property during the time of Respondent's tenure as the sole Trustee.[41]

### E.     Sale of Wildwood and Wilmington Properties

Next, in Petitioner's role as Executor and Trustee of the Estate of Bernadine Campo, she began the process of selling the Wildwood Property. Thereafter, the Wildwood Property sold for $650,000.00.[42] The Trust received a total amount of $576,412.38 from the sale.[43] Petitioner began the process of selling the Wilmington property which contained Respondent's personal belongings. On May 18, 2023, the Wilmington Property settled at a price of $350,000.00 and the Trust received proceeds amounting to $317,520.91.[44]

The Trust incurred expenses in the amount of $49,336.53 in preparing these two properties for sale.[45]   In large part, this expense includes $33,676.16 in renovations to prepare the property for sale.[46] Other costs incurred to prepare the

---

[40] *Id.*

[41] Tr. 66:22-24 – 67:1-3

[42] PX 35.

[43] PX 18.

[44] PX 12; PX 18.

[45] PX 7; PX 9; PX 10; PX 11; PX 18.

[46] PX 10.

property for sale include $3,936.38 for the Investigative services used in order to ensure peaceful interaction between the parties, $5,098.00 for repairs and the clean out of the Wilmington Property prior to its sale, $495.00 for the rental of a dumpster for the clean out of the Wilmington Property, $976.00 for cleaning services to prepare the Wilmington property for sale, $404.99 for the rental of a storage unit to store the tangible personal property of the Respondent, $450.00 to tow the vehicles from the property that were left on the properties by the Respondent, and $4,300.00 for Mr. Fix-It for their services removing and transporting property out of the Wilmington Property.[47]

### F.    Louis DeSilvio and Decedent's Unaccounted for Asset

Louis DeSilvio died in 1996 and the beneficiary of Louis's estate was the Decedent.[48] Financial accounts in the name of the Estate of Louis DeSilvio have remained open and under the control of Respondent as the administrator as recently as March of 2022 containing $36,583.47 in assets.[49] There was no accounting provided by Respondent that indicated that these assets had been transferred to the Trust or whether the assets were used for the benefit of the Trust account.[50]

---

[47] PX 7; PX 10; PX 9; PX 11; PX 18.

[48] Tr. 57:16-20.

[49] PX 16.

[50] Tr. 91:21-24 – 92: 1-15.

In addition, at the time of her death, Decedent possessed stocks amounting to $46,222.33.[51] Respondent, during his time as Executor of the Estate of Bernadine E. Campo, did not distribute this asset nor did he provide an accounting of the asset to indicate its use toward the benefit of the Trust.[52]

### G.    Procedural Posture

The Petitioner initiated the present action on October 11, 2023, filing a petition seeking the Court's approval of an accounting of the Trust and for the approval of the distribution of the Trust assets proportionate to any judgments entered by the Court against the respondent.[53] On November 7, 2023, Respondent requested an extension to file an answer to the complaint.[54] I granted Respondent's request for an extension on November 14, 2023, giving the Respondent until December 4, 2023, to respond to the petition.[55] Respondent filed an answer on November 15, 2023.[56]

On April 5, 2024, Petitioner requested a one-day hearing with the Court to gain court approval of the accounting and distribution from the Trust, and to

---

[51] PX 15.

[52] Tr. 92:10-15.

[53] D.I. 1.

[54] D.I. 5.

[55] D.I. 7.

[56] D.I. 8.

terminate the Trust.[57] The matter was originally scheduled for May 30, 2024.[58] On May 14, 2024, Respondent filed a letter with the Court requesting a continuance which was objected to in a letter filed by the Petitioner on May 15, 2024.[59] The Request for continuance was granted on May 20, 2024.[60] Trial was then rescheduled for June 26, 2024.[61]

On May 21, 2024, Respondent filed a motion to vacate the default judgment entered in the prior action, *Candice L. Soule v. Kevin F. Campo*, C.A. No. 2020-0980-SEM and requested that the Court restore him as executor and trustee of both the Estate and the Trust.[62]  Petitioner filed an opposition to the Motion to Vacate the Default Judgment on May 31, 2024.[63] On June 21, 2024, Respondent filed a motion to exclude evidence or to extend the trial date, stating that he needed more time to obtain counsel.[64] Respondent then amended this request on June 24, 2024, including a motion to dismiss the claim for back rent because of an expiration of the statute of

---

[57] D.I. 16.

[58] D.I. 19.

[59] D.I. 20; D.I. 22.

[60] D.I. 23.

[61] D.I. 30.

[62] D.I. 26.

[63] D.I. 29.

[64] D.I. 35.

limitations and for unreasonableness.[65] On the same day, I denied Respondents request to exclude evidence and to extend the trial date.[66] Trial was held on June 26, 2024.

At the start of trial, on June 26, 2024, I gave a bench ruling on Respondent's Motion to Dismiss and Motion to Vacate the Default Judgment.[67] Kevin F. Campo moved to vacate the April 30, 2021 order that was entered as a default judgment against him in the prior civil action before Magistrate Judge Molina, that took place nearly three years ago.[68] The prior default judgment order was also previously reviewed in the form of a motion for relief of judgment.[69] I denied the motion to vacate.[70] Two days prior to the hearing, Kevin F. Campo moved to dismiss Petitioner's claim for back rent due to statute of limitations and for unreasonableness.[71] As previously explained to the parties, the motion to dismiss was denied because Kevin F. Campo was already granted a thirty-day extension, failed to file the present motion to dismiss until two days prior to the date of hearing,

---

[65] D.I. 40; D.I. 41.

[66] D.I. 42.

[67] Tr. 14:10-24 – 18:1-18.

[68] D.I. 26.

[69] C.A. No. 2020-0980-SEM, D.I. 33.

[70] Tr. 17:1-3.

[71] D.I. 41.

and failed to include these additional arguments in his original answer.[72] The hearing then proceeded on the issues.

## II. ANALYSIS

### A. Approval of the Accounting

#### 1. Petitioner is appropriately exercising her rights as successor trustee in seeking court approval of the accounting.

Under 12 Del. C. § 3580, the term "trustee" includes "fiduciaries and other persons exercising, or directing or consenting to the exercise of, or who are required to be consulted before the exercise of, powers or duties under a trust's governing instrument...." A successor trustee may inquire into the accounts and records of a predecessor trustee and "into the acts and omission of any predecessor" trustee if they have "actual knowledge of breach of trust or information concerning a possible breach of trust that would cause a reasonable person to inquire" into such misconduct.[73]

---

[72] Tr. 18:6-10.

[73] 12 Del. C. § 3544; Chancery Court Rules, Rule 133 also state "whenever the new guardian of the property or trustee has actual knowledge of a breach of fiduciary duty by its predecessor that would cause a reasonable person to inquire, the new guardian of the property or trustee shall examine the accounts and records of its predecessor, and inquire into the acts and omissions of its predecessor, and report to the Court any maladministration of its predecessor.".

Valid remedies for a breach of trust include "ordering a trustee to account" or "by granting any other appropriate relied."[74] A successor Trustee "shall have responsibility only for property which is actually delivered to it by its predecessor and shall have all of the powers and discretions conferred in the governing instrument upon the original trustee."[75]

The rights afforded to Petitioner in her role as successor trustee under the statute and within the four corners of the Trust itself, grant her the right to inquire into the actions taken by the Respondent during his tenure as trustee. As previously noted, Petitioner was granted the duty of successor trustee when the Default Order was entered against the Respondent for failing to answer the complaint in the original matter.[76] This Court, under advisement of Magistrate Judge Molina, granted the Motion for Default Judgment, removed Kevin F. Campo as trustee, and appointed Candice L. Soule, Decedent's granddaughter, as successor trustee.[77] I find that

---

[74] 12 Del. C. § 3581(b)(4) and (9).

[75] 12 Del. C. § 3544; See also Chancery Court Rules, Rule 133 which states in relevant part that when a successor trustee is appointed by the court the predecessor trustee "shall pay over, transfer and deliver to the new guardian of the property or trustee shall receive a take possession of all cash, investments, securities, property and effects constituting [] the trust.".

[76] C.A. No. 2020-0980-SEM, D.I. 13.

[77] *Id.*

Petitioner, therefore, rightfully assumes the role of Trustee under the 12 Del. C. § 3580.

A successor Trustee is not required, nor responsible to inquire into the acts or omissions of the removed Trustee absent a showing of breach.[78] Respondent's failure to respond to verify the truth or falsity to the Petitioner's claim that Respondent was "using the assets of the Trust and Estate to his own benefit" in his role as Trustee would be sufficient for a reasonable person to inquire into the accounts and records of the predecessor trustee and seek redress for any act or omission taken during his role.[79]

I find that Petitioner's attempt to account for assets and property, once held in Respondent's sole possession, comports with the rights and obligations afforded within the Default Order because the Order required Respondent to account for such assets or expenses.[80] I also find that Petitioner is within her right to bring the present action asking the Court to approve her own accounting of the assets and expenses of the Trust because Respondent failed to comport with the Default Order imposing the obligation on him to provide his own accounting.

---

[78] 12 Del. C. § 3544.

[79] C.A. No. 2020-0980-SEM, D.I. 1; Ct. Ch. R. 133.

[80] C.A. No. 2020-0980-SEM, D.I. 33; Ct. Ch. R. 133.

## 2. Accounting is approved

Under 12 Del. C. § 3525(c), "trustees required to file accounts shall file with the Register in Chancery, … and submit for the approval of the Court of Chancery just and true accounts, showing all receipts and disbursements of their trusts, as the Court requires, but not oftener than once in 2 years, unless there is special occasion. Such accounts shall also show the manner in which the principal of the trust is invested." The trustee may move for the Court to "proceed to approve or disapprove the investments but otherwise the Court shall approve or disapprove the remainder of the account without passing upon the manner in which the principal of the trust is invested."[81]

The party providing the accounting must account "for all income received" and "bears the burden of coming forward with their expenditures."[82] This is a demanding burden and the party charged with providing the accounting "must prove 'both the accuracy of its accounting and the propriety of the underlying transactions."[83] An accurate accounting cannot be found where "listed expenses were not supported by sufficient evidence or appeared to have been inaccurately

---

[81] 12 Del. C. § 3525(c).

[82] *Dolby v. Key Box "5" Operatives, Inc.*, 1996 WL 741883, at *4 (Del. Ch. Dec. 17, 1996).

[83] *Id.* at *1.

17

recorded."[84] In instances where the party that has failed to provide an adequate accounting has had "ample opportunity to introduce evidence at trial to supplement or contradict the plausible evidence offered by the plaintiffs, but have failed to do so, there is no basis for this Court to question the accounting provided by the plaintiffs."[85]

Here the Petitioner request for this Court to approve the accounting she prepared in the place of Respondent's absent accounting. The accounting specifies the date, check number, payee, the amount going in and out of the Trust, and a description of the deposit or expense between the time of February of 2022 and August of 2023.[86] The Petitioner also provided evidence in the form of invoices, receipts, and checks evidencing the movement of the assets within the Trust as reflected in the accounting. This is sufficient information to provide for a just and true accounting of the receipts and disbursements of the Trust account between February of 2022 and August of 2023.

Further, Respondent has failed to provide an accounting of his own of the Trust assets and has had opportunity to introduce evidence at trial to dispute the

---

[84] *Id.* at *4.

[85] *Id.* at *4 citing *Mougianis v. Embassy Realty Company*, A.2d 844, 848 (Del. Ch. Apr. 1, 1955).

[86] PX 18; D.I. 1.

accounting presented by the Petitioner but ultimately failed to do so. It follows that "there is no basis for the Court to question the accounting provided by" the Petitioner.[87] I find that the amount specified in the accounting of $778,868.08 to be a just and true accounting of the Trust and this amount will be used to determine the approved distribution to the beneficiaries of the Trust.[88]

## B.  Ousting

"A cotenant is generally entitled to make personal use of property held in common and is not accountable for such use in the absence of ouster."[89] "However, if a co-tenant has exclusive possession of the property and ousts other co-tenants, then the rental value (representing the benefit received by the co-tenant having exclusive possession) may be set off against their share of the sale proceeds."[90]

Ouster is "[t]he wrongful dispossession or exclusion of someone (esp. a cotenant) from property (esp. real property)[.]"[91] To find ouster, Petitioner must have

---

[87] *Dolby v. Key Box "5" Operatives, Inc.*, 1996 WL 741883, at *4 (Del. Ch. Dec. 17, 1996).

[88] Petitioner claims in the Petition that the accounting of the Trust showed that there was $779,077.00 presently being held in the trust and used that number to calculate in their petition the distribution amount to the beneficiaries. (D.I. 1). The Court will use the number in the exhibit of the accounting presented during trial to determine the approval of the distribution requested by Petitioner. (PX 18).

[89] *In re Estate of Gedling*, 2000 WL 567879 at *7 (Del. Ch. Feb. 29, 2000).

[90] *Ponder v. Willey*, 2020 WL 6735715 at *3 (Del. Ch. Nov. 17, 2020).

[91] *Ouster*, BLACK'S LAW DICTIONARY (11th ed. 2019).

been excluded from the Property by unilateral act of the Respondent.[92] Respondent's sole possession of the Property, alone, does not constitute ouster.[93]

Both Petitioner and Respondent have made claims that they are due the proportionate one-half share of the fair rental value of the Wilmington Property and the Wildwood Property for having been ousted by the other. Petitioner claims that Respondent had exercised exclusive control over both the Wilmington Property and the Wildwood Property from January 2016 until September 2021.[94] Petitioner claims that Respondent exercised control over these properties to Ms. Novack's exclusion up until her death in April of 2017 and then to the exclusion of the Petitioner until September of 2021.[95] Respondent argues that he was ousted when Petitioner changed the locks and sold the Wildwood Property and the Williamstown Property.[96] I find that neither party has made a showing of exclusion of the kind sufficient to amount to an ousting. I explain how I reached these conclusions in relevant part to each of the individual claims below.

---

[92] See, *In re Real Estate of Holmes*, 2000 WL 1800127, at *4 n.8 (Del. Ch. Nov. 21, 2000), aff'd, 787 A.2d 100 (Del. 2001).

[93] *Smith v. Lemp*, 63 A.2d 169, at *170 (Del. Ch. Jan. 3, 1949).

[94] D.I. 1 ¶ 44.

[95] *Id.*

[96] Tr. 109: 12-16.

### 1. Ouster as to Ms. Novack.

The Petitioner fails to provide any evidence that Ms. Novack was denied access to any of these properties in such a way that Respondent exercised exclusive control over the properties. Respondent provided testimony which went undisputed at trial that Ms. Novack resided in the Wilmington Property until the day she died,[97] indicating that she was not out of possession of that property, and Petitioner failed to show the court any evidence that Ms. Novack was out of possession of the Wildwood Property. There was also little evidence provided as to any of Respondent's specific actions toward the Ms. Novack that could have been interpreted to have been done with the intent to dispossess the Decedent of her possessory rights in the two properties. It is for these reasons that I do not find the proportional rental value to the properties be awarded to the detriment of Respondent's distribution for the period between Decedent's death in January of 2016 and Ms. Novack's death in April of 2017.

### 2. Ouster as to the Petitioner.

At trial, Petitioner was unable to provide evidence or testimony of actions taken by the Respondent that would amount to exclusionary action qualifying as her being ousted from the property. Petitioner testified to general hostility and arguments

---

[97] Tr. 113: 18-20.

between the two that made her feel uncomfortable in gaining access to the property as well as a description of an instance where the police were called to remove her from the Wildwood property.[98] But when questioned further it was shown that Petitioner was unable to say with certainty that it was Respondent who had called the police.[99] Respondent was in possession of the properties at issue however mere possession of property owned as co-tenants does not constitute an ousting.[100] When asked to hand over the keys to the properties, the Respondent did so on the day scheduled with the hired agent of the Petitioner and made attempts to remove his personal belongings from the properties in the time frame communicated to him.[101] Respondent had claimed sole possession over the properties, however ouster still carries with it a requirement of some element of exclusive use and active dispossession by the wronged party. Respondent's compliance with removing himself from the property by handing over the keys to the hired investigator and taking steps to remove his personal items from the property does not comport with Petitioner's assertion that Respondent has exercised possession to her exclusion.[102]

---

[98] Tr. 64: 4-7; Tr. 66: 7-11.

[99] Tr. 98:1-4.

[100] *Smith v. Lemp*, 63 A.2d 169, 170 (Del. Ch. Jan. 3, 1949).

[101] PX 7.

[102] *In re Real Estate of Holmes*, 2000 WL 1800127, at *4 (Del. Ch. Nov. 21, 2000).

The lack of evidence of any specific instances of exclusion of the Petitioner, as well as the compliance with the requests to vacate the premises by the Respondent combine to show that there is no cause for me to find that any ousting of Petitioner has occurred.

### 3. Ouster as to the Respondent.

A trustee has the power to "[a]cquire or sell property for cash or on credit, at a public or private sale."[103] In this instance the Trust agreement provides the trustee with broad authority to manage and distribute the assets within the Trust empowering the trustee to "perform every act reasonably necessary to administer the trust."[104] Section 5.01 of the trust agreement further specifies that the trustee has the power to "sell, exchange, grant, convey, deliver, assign, [and] transfer" the assets held in trust." I find that Respondent was not ousted from the property when he was made to hand over the keys to the properties and remove his own personal belongings, because Petitioner was acting within the authority granted to her through the terms of the Trust agreement and under the authority granted in the Default Order to prepare the properties for sale to complete the final distribution of the Trust.

---

[103] 12 Del. C. § 3325(2).

[104] PX 3, section 5.01.

## C.    Judgment Against Respondent

The Default Order states "A judgment may be entered against Kevin F. Campo in favor of the Estate and Trust for assets, income, and expenses he is unable to account for or for any damages suffered to be determined at a further hearing of the Court, with notice duly given to Kevin F. Campo."[105] The aforementioned "further hearing of the Court" is upon us, and Respondent has been given ample opportunity to provide his own accounting and has received sufficient notice of Petitioner's sought after judgments and damages.

An accounting may be ordered as "an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to either as a result."[106] Generally, it is the party that has been ordered by the court to produce an accounting that "bears the burden of proving the accuracy of its accounting and the propriety of the underlying transactions."[107] The

---

[105] C.A. No. 2020-0980-SEM, D.I. 13 ¶6.

[106] *Albert v. Alex. Brown Management Services, Inc.*, 2005 WL 2130607, at *11 (Del. Ch. August 26, 2005).

[107] *Dolby v. Key Box "5" Operatives, Inc.*, 1996 WL 741883, at *1 (Del. Ch. Dec. 17, 1996).

Court may enter judgment for any unaccounted-for assets in which the defendant has failed to have met his or her burden of proof.[108]

Petitioner has requested the Court to enter judgment on unaccounted for rental payments associated with the Williamstown property and the unaccounted -for stock and bank accounts for which Respondent was in control as executor of Decedent's estate.[109] Petitioner also requests that the Court find that damages be awarded for expenses attributable to the Respondent's time as trustee and failure to comply with the Default order.[110] The issue now being whether Petitioner's claimed judgments and damages are attributable to Respondent's actions or inactions both as Trustee or his failure to fulfill the duties imposed by the Default Order. I address each of these claims separately below.

### 1.    The Williamstown Property

Petitioner claims that Respondent owes the Trust $78,000, which represents one half of the unaccounted-for rental income of the Williamstown Property between the years 2016 and 2020 amounting to $124,800, plus $31,200 representing the additional income that should have been received between the years of 2021 and

---

[108] See, e.g., *Senior Partner, Inc as Trustee of Ardythe Hope Children's Hosp.*, 2022 WL 17246317, at *6 (November 28, 2022) where Magistrate Judge Molina ordered damages be paid in the amount for which the defendant failed to account.

[109] D.I. 1 ¶ 83.

[110] D.I. 1 ¶ 84.

October of 2022 when Respondent had failed to maintain the property for Williamstown's eligibility for HUD rental payments.[111] Respondent failed to provide an accounting that identified whether these rental payments ever entered the trust account or whether they were otherwise used for the benefit of the Trust. I find that Respondent was obligated under the Default Order to have provided an accounting of the payments received for the rental of the Williamstown Property during the time in which he was the sole trustee of the Trust, between April of 2017 when Ms. Novack died and June of 2018 when the HUD rental payments stopped being paid. Respondent failed to provide an accounting that reflected any of the use of the rental payments that came in during the time in which he was the sole trustee. Further, Respondent failed to provide any testimony at trial of how the rental payments that were collected between the stated time period, had been allocated for the benefit of the Trust, despite being given ample opportunity to do so.[112] I find that a judgment may be entered against the Respondent for half the unaccounted-for rental payments between April of 2017 and June of 2018, **amounting to $9,750.00.**

I do not find that damages should be awarded for Respondent's alleged failure to maintain the HUD eligibility of the Williamstown Property during the time period

---

[111] D.I. 1 ¶ 83.

[112] Tr. 67:1-3.

of June of 2018 to 2021 because I do not find the maintenance of HUD eligibility to have been sufficiently attributable to Respondent's obligations as trustee. The conduct of the trustee is first and foremost governed by the language of the Trust agreement. In section 5.01 of the Trust, the trustee has broad authority in the management of the Trust assets.[113] Additionally, Respondent as a beneficiary of the Trust has a possessory interest in the Wildwood Property. I therefore will not enter judgment for the time in which the Wildwood Property was no longer HUD eligible because Respondent was within his rights as the trustee and as beneficiary to manage the presence and relationship of the Tenant with the Trust asset.

### 2. 49k in Damages that Petitioner claims are attributable to Respondent's administration of the trust and failure to comply with the Default Order.

Petitioner claims that Respondent owes $49,336.53 in damages due to unnecessary costs and expenses incurred by the Trust.[114] This is made up of the expenditures of $3,936.38 for the cost of hiring O'Rourke Investigative Services, $5,098.00 for repairs and the clean out of the Wilmington Property prior to its sale, $495.00 for the rental a dumpster for the clean out of the Wilmington Property,

---

[113] See PX 3 section 5.01 which states "…the trustee is hereby authorized and empowered to hold, retain, invest, reinvest, and manage without diversification as to land, amount, or risk of non-productivity in realty or personalty…."

[114] D.I. 1 ¶82.

$976.00 for cleaning services to prepare the Wilmington Property for sale, $33,676.16 for renovations to the Wilmington Property, $404.99 for the rental of a storage unit to store the tangible personal property of the Respondent, $450.00 to tow the vehicles from the property that were left on the properties by the Respondent, and $4,300.00 for Mr. Fix-It for their services removing and transporting property out of the Wilmington Property.[115]

I find that the expenses for the hiring of the investigative services ($3,936.53), the rental of the storage unit to store the tangible property that were left on the properties by the Respondent ($404.99), and the cost of towing the vehicles from the property that were left by the Respondent ($450.00) are expenses attributable to the Respondent's administration of the Trust and non-compliance with the Default Order. I find that these items, amounting to $4,791.37, should therefore be deducted from the Respondent's distribution. The other costs incurred by the Trust in preparing the properties for sale are not attributable to Respondent as the actions taken would have been necessary to prepare the properties for sale regardless of any action taken by Respondent both during and after his tenure as Trustee. I therefore find that only damages **in the amount of $4,791.37** for respondent's actions and inactions can be deducted from his distribution.

---

[115] D.I. 1 ¶ 82; PX 7; PX 8; PX 9; PX 10; PX 11.

### 3. Louis DeSilvio's Unaccounted for Assets and Decedent's Stock Account.

Petitioner also request for Respondent's distribution to be diminished by half the amount of the unaccounted-for PNC Banking and Investment Accounts for the Estate of Louis DeSilvio and the stocks listed in the Estate of Bernadine Campo totaling to $41,402.91[116] When Respondent was named executor of the Estate of Louis DeSilvio, Respondent failed to account for these assets to the Court in the requisite 30 day period allotted, and these assets were in the sole and primary control of Respondent when he was named executor of the Estate. Respondent also had an opportunity to provide evidence and testimony at trial regarding the use of these assets and failed to do so. **I find that Respondent's distribution may be diminished by $41,402.91** because Respondent failed to meet his burden of proof in providing an accounting of assets that were under his sole control.[117]

---

[116] The Petitioner's exhibits presented at trial did not reflect the amount they had reported in their original petition. The Court will use the values of the stocks, investment accounts, and bank accounts as they are reported in the provided exhibits. The number, $41,402.91 represents half of the sum of the total value of the stocks listed in "Schedule B" of the inventory form in Petitioner's exhibit 15 reported as $46,222.33, the "Total Deposits" in the PNC "Bank Deposit Accounts" identified in Petitioner's exhibit 16 reported to amount to $5,961.37, and the "Net Value" of the "Investment Accounts" listed in Petitioner's exhibit 16 to be valued at $30,622.10. (PX 15; PX 16).

[117] *Dolby v. Key Box "5" Operatives, Inc.*, 1996 WL 741883, at *1 (Del. Ch. Dec. 17, 1996); *Senior Partner, Inc as Trustee of Ardythe Hope Children's Hosp.*, 2022 WL 17246317, at *6 (November 28, 2022).

## D.    Authorization of Distribution

A trustee may, "On distribution of the trust property or the division or termination of a trust, make distributions in divided or undivided interests, allocate particular assets in proportionate or disproportionate shares, value the trust property for those purposes, and adjust for resulting differences in valuation."[118] Similarly, under 12 Del. C. § 3325 (23), a trustee may, "Decide, in accordance with § 61-103(b) of this title, how and in what proportions any receipts or disbursements are credited, charged or apportioned as between principal and income… ." 12 Del. C. § 61-103(b) requires that "a fiduciary shall administer a trust or estate impartially, based on what is fair and reasonable to all of the beneficiaries, except to the extent that the Trust intends to favor 1 or more beneficiaries."[119]

For the reasons further explained herein, I find it is appropriate to enter judgment for half the unaccounted-for HUD payments between the years April of 2017 and June of 2018 in the amount of $9,750.00, half the value of the unaccounted-for stocks of decedent in the amount of $23,111.17, and half the unaccounted-for money in the PNC bank account in the amount of $18,291.74. I find that in furtherance of fulfilling the relief ordered in the Default Order, these judgments may

---

[118] 12 Del. C. § 3325 (22).

[119] See, also 12 Del. C. § 61-103(a)(2).

be reflected in the Respondent's final distribution of the Trust **by subtracting $51,152.91 from Respondent's final share**.[120] Additionally, I find that the judgments entered, whose reasoning is reflected above, of costs attributable to Respondent's administration of the trust and non-compliance with the Default Order, **amounting to $4,791.37, may also be subtracted from Respondent's distribution**.[121] The total amount the Respondent's share shall be reduced due to his actions and/or inactions during his administration of the Trust and the Estate is **$55,944.28.**

### E.    Attorney Costs and Fees

Under 12 Del. C. § 3584, "In a judicial proceeding involving a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorneys' fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Generally, a trustee is entitled to an award of reasonable attorneys' fees when defending a trust and his own actions as a trustee.[122] Exceptions to that rule exist in instances the trustee has acted in bad faith or

---

[120] C.A. No. 2020-0980-SEM, D.I. 13.

[121] This refers to the costs of the hiring of the private investigator, the rental of the storage unit, and the cost of towing the vehicles left on the property by the respondent and does not include any of the expenses incurred otherwise preparing the property for sale.

[122] E.g., *In re Unfunded Ins. Tr. Agreement of Capaldi*, 870 A.2d 493, at *497 (Del. 2005); *McNeil v. McNeil*, 798 A.2d 503, at *515 (Del. May 16, 2002). *In re Estate of Valan*, 2000 WL 567859, at *4 (Del. Ch. Mar. 30, 2000).

fraudulently and depend upon the extent of the trustee's wrongful conduct, and whether his actions benefitted the trust.[123]

Section 6.10 of the Trust states that "the trustee in its discretion and at the expense of the Trust estate may institute, join, compromise, settle, dismiss, and defend any trust created under this instrument and property administered hereunder in any judicial or administrative proceeding. The Trustee is authorized to retain such legal counsel and ancillary personnel as it may deem appropriate in the exercise of its discretion hereunder."[124]

I find that Petitioner initiated this litigation as successor Trustee in the best interest of the Trust and in protecting the assets and its distribution. I do not find any bad faith on Petitioner's part that would serve as an exception to this general rule. I believe it is proper and fair to nonetheless direct Petitioner to cover the attorney's fees and costs directly from the amount held in escrow by The Powell Firm, LLC or from the Trust itself after the remainder held in escrow is released to the Trust. I do not find an award to Petitioner of attorney's fees and costs from Respondent's direct distribution warranted, and therefore order that the Attorney's fees and costs for the present action be taken from the Trust prior to distribution.

---

[123] *McNeil*, 798 A.2d at 514-15. *Lockwood v. OFB Corp.*, 1975 WL 1262, at *1 (Del. Ch. Dec. 1, 1975).

[124] PX 3.

## III. CONCLUSION

For reasons further explained above, I find it appropriate that Petitioner's Accounting be approved. I am unable to find on the facts presented before me sufficient evidence to support either party's claim for the proportional rental value of the properties due to ousting. The Petitioner may offset the final distribution of the Trust in accordance with the findings of this final report reflecting the unaccounted-for rental payments for the Williamstown Property between April of 2017 and June of 2018, the unaccounted-for assets from the Decedent's stocks that she was in possession of at her death, the unaccounted-for assets in the PNC bank account belonging to the deceased Mr. DeSilvio, and the judgment of $4,791.37 for the expenses incurred by the Trust due to respondent's actions and inactions over the course of this final administration of the Trust and the Estate. Costs and fees may be charged to the escrow account or the Trust prior to the final distribution.

With respect to the inquiry made at trial regarding whether Petitioner is a beneficiary of the Trust,[125] because this was not raised in Respondent's Answer or any of Respondent's pre-trial motions, and in order to avoid a potential advisory opinion, this report does not address that issue. To the extent this remains an issue for the Respondent, Respondent may file a Petition for Instructions with this Court.

---

[125] Tr. 104:22-24 – 105:1-7; Tr. 110: 9-11; Tr. 176:16-24 – 182:1-12.

This is my final report, and exceptions may be filed under Court of Chancery Rule 144.[126]

IT IS SO ORDERED.

---

[126] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").